COMMONWEALTH of Pennsylvania, Appellee

v.

Gerald SZAKAL, Appellant.

Superior Court of Pennsylvania.

Argued May 16, 2012.

Filed Aug. 3, 2012.

Noah M. Geary, Washington, for appellant.

Jerome A. Moschetta, Assistant District Attorney, Washington, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.

Gerald Szakal (Appellant) appeals from the judgment of sentence entered following his convictions for murder in the second degree, robbery, theft by unlawful taking, receiving stolen property, and conspiracy.[1] After careful review, we affirm.

Appellant was arrested on March 9, 2008, and charged with capital murder,[2] robbery, and other related crimes in connection with the March 5, 2008, shooting deaths of Howard and Nancy Springer (the Springers) at their home in Carroll Township, Washington County. The Commonwealth theorized that Appellant, acting alone, robbed and murdered the Springers to cover up a previous theft.[3] The Commonwealth further alleged that co-defendants Justin Welch, Gregory Carpenter, and Tecko Tartt, collectively "the co-defendants," assisted Appellant in his plan to rob and kill the Springers and were subsequently paid for their efforts out of the proceeds from the robbery.

Following a jury trial, at which the co-defendants[4] testified for the Commonwealth and Appellant took the stand on his own behalf, Appellant was convicted of two counts of murder in the second degree, two counts of robbery, one count of theft

---

\* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. §§ 2502(b), 3701(a)(1)(i), 3921(a), 3925(a), and 903, respectively.

2. On April 29, 2008, the Commonwealth filed its notice of aggravating circumstances in pursuit of the death penalty.

3. Prior to the deaths of the Springers, Appellant had stolen jewelry from his mother, which he later sold at the Springers' home-based precious metals business. The Commonwealth alleged that this incident formed the basis of the plan to rob and murder the Springers.

4. Prior to Appellant's trial in this matter, all co-defendants pled guilty to various offenses related to their involvement in this incident.

by unlawful taking, one count of receiving stolen property, and two counts of conspiracy.

On October 9, 2009, Appellant timely filed a motion to set aside his guilty verdict and requested a new trial. On October 21, 2009, the trial court issued an order denying Appellant's requested relief.

On October 28, 2009, Appellant was sentenced to concurrent terms of life imprisonment for each second degree murder conviction. Additionally, Appellant was sentenced to a consecutive, aggregate term of 20 to 40 years' imprisonment on the remaining counts.

Appellant filed a timely post-sentence motion seeking to modify his sentence on the basis of merger and allegations of juror misconduct. On November 25, 2009, the trial court granted Appellant's motion in part and issued an order vacating the sentences imposed for the robbery and theft convictions[5] because those crimes merged with the homicide offenses for the purposes of sentencing. Appellant was re-sentenced to two concurrent terms of life imprisonment on each count of homicide. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's brief was filed on April 5, 2011,[6] wherein Appellant raises the following 15 claims of error:

1. Is [Appellant] ... entitled to meaningful appellate review of his issues?

2. Can an [a]ppellant be afforded meaningful review of his issues if the trial record has been substantially and materially altered?

3. Is Appellant ... entitled to a record/trial transcript which has not been materially altered upon which to brief/advance his issues?

4. Does Appellant ... have the constitutional right under both the Constitution of the United States of America and the Pennsylvania Constitution to the effective assistance of counsel on direct appeal?

5. Can the undersigned render effective assistance of counsel with a record that has been materially altered with respect to the issues that must be advanced?

6. Is [Appellant] entitled to a new trial if the trial transcript has been intentionally altered for the purpose of preventing Appellant from advancing his issues and having them decided on their merits?

7. Is [Appellant] entitled pursuant to Rule of Appellate Procedure 1926 to copies of the audio recording of the trial transcript, copies of the floppy disk of the trial transcript as well as any other format that exists?

8. Should [Appellant] be entitled to submit a supplemental Brief upon receipt of an unaltered copy of the trial record whether it be in the form of an audio recording, floppy disk or other format?

9. Did the trial [c]ourt err in this death penalty case in denying [Appellant's] motion for a mistrial when a [potential] juror, during jury selection, stated in the presence of the entire jury pool: "This guy's fucking guilty" and jurors denied

---

**5.** The trial court determined that the crime of criminal conspiracy to commit robbery did not merge with the crime of second degree murder for sentencing purposes and afforded Appellant no relief on that claim. Trial Court Opinion, 6/9/2010, at 63.

**6.** On May 2, 2011, in response to Appellant's brief, and the allegations contained therein, the trial court filed a supplemental opinion pursuant to Pa.R.A.P. 1925(a), as well as CDs containing portions of the audio recordings at issue.

that they heard this outburst when specifically questioned by the [c]ourt?

10. Did the trial [c]ourt err by denying Appellant's motion for a mistrial when a Government witness spoke directly to the jurors during a trial recess and stated to them: "[Appellant] told me everything he did in the [Secured Housing Unit of the Washington County Jail]. He told me it all. [Appellant] had [the victim] down and he was kicking her."?

11. Did the trial [c]ourt err by denying Appellant's motion for a mistrial when the prosecutor stated in his closing argument that [Appellant] could have called certain witnesses to testify and failed to and likewise could have conducted tests on certain forensic evidence and failed to, which impermissibly shifted the burden of proof to [Appellant]?

12. Did the trial [c]ourt err in giving an incomplete and misleading jury instruction regarding unanimity of the verdict in response to a question from jurors during deliberations?

13. Did the cumulative effect of

(i) a juror outburst during jury selection wherein a juror stated in the presence of the entire jury pool that "[Appellant] was fucking guilty"; AND

(ii) a Commonwealth witness speaking to jurors at a trial recess and telling them that [Appellant] was guilty; AND

(iii) statements during the prosecution's closing argument that [Appellant] could have called certain witnesses to testify in his defense but did not and could have tested certain pieces of forensic evidence but did not; AND

(iv) an erroneous, misleading and coercive jury instruction regarding juror unanimity

deny the Appellant a fair trial?

14. Did the trial [c]ourt err in denying Appellant's suppression motion regarding his statement and photographs which were taken in violation of the six hour rule, his right to a prompt preliminary arraignment and because he was unlawfully in custody of the Pennsylvania State Police?

15. Did the trial [c]ourt err in denying [Appellant] the right to call a False Confession Expert which was the heart of [Appellant's] case and would have assisted the trier of fact?

Appellant's Brief at 6–9 (emphasis deleted).

In general, we agree with the rhetoric championed by Appellant in his first six issues: a criminal defendant is entitled to meaningful appellate review, effective assistance of counsel at all stages of the proceedings, and an accurate record from which to perfect an appeal. Our criminal justice system is designed with these tenets in mind and allegations that the rights of an accused have been compromised deserve, and are afforded, the utmost scrutiny.

On appeal, Appellant's counsel asserts that the jury selection and trial transcripts were "intentionally altered for the purpose of preventing Appellant from advancing his issues and having them decided on their merits." Appellant's Brief at 29. Counsel contends that he has not been provided with a full transcript and meaningful appellate review has been rendered impossible. *See Commonwealth v. Goldsmith*, 452 Pa. 22, 304 A.2d 478, 480 (1973) ("Simple logic and justice require that once a defendant is guaranteed a right of appeal ... he must be provided with a 'transcript or other equivalent 'picture' of what transpired below' in order to have a 'meaningful appeal' ".)

This Court has previously addressed the concept of meaningful appellate review as it relates to transcripts of relevant proceedings:

It seems well established that where the *entire* transcript of a trial is unavailable, meaningful appellate review is not possible, and a new trial must be awarded. *See Commonwealth v. De Simone,* 447 Pa. 380, 290 A.2d 93 (1972); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971); *Commonwealth v. Homsher,* 264 Pa.Super. 271, 399 A.2d 772 (1979); *Commonwealth v. Dixon,* 253 Pa.Super. 383, 385 A.2d 391 (1978). *See also Commonwealth v. Shields,* 477 Pa. 105, 383 A.2d 844 (1978) (New trial awarded due to impossibility of appellate review where Commonwealth did not contradict appellant's argument that the prosecutor's summation had contained reversible error to which timely objections had been made). In every instance in which a new trial was awarded, however, *meaningful appellate review* had been rendered impossible due to the absence of a transcript *or an equivalent picture* of the proceedings at trial. "In order to assure that a defendant's right to appeal will not be an empty, illusory right, we require that he or she be furnished a full transcript or other equivalent picture of the trial proceedings. Meaningful appellate review is otherwise an impossibility, and fairness dictates that a new trial be granted." *Commonwealth v. Shields, supra* at 108–09, 383 A.2d at 846.

*Commonwealth v. Lyons,* 346 Pa.Super. 585, 500 A.2d 102, 105–106 (1985) (emphasis in original).

Instantly, Appellant's notice of appeal was filed on December 24, 2009. The official transcripts of jury selection and trial were filed by the court stenographer on March 30, 2010 (seven volumes of testimony), March 31, 2010 (two volumes), April 1, 2010 (three volumes), April 8, 2010 (one volume), and April 9, 2010 (two volumes). Appellant, through counsel, sought several continuances in order to file his brief with this Court.

On February 1, 2011, Appellant sought an extension of time in which he raised for the first time allegations that the official trial and jury selection transcripts had been altered. Specifically, counsel claimed:

1. That he made a motion for mistrial on September 23, 2009, that should have appeared on page 119 but instead appears on page 169. Counsel claims this motion has been substantially reduced and was lengthier than the single sentence appearing on page 169.

2. That he requested a mistrial on September 29, 2009, following the prosecutor's closing arguments, and that the motion should appear on page 80 of the transcript, not page 90.

3. That he objected to the trial court's instruction to the jury regarding the unanimity of their verdict, but that his objection was entirely removed from the notes of testimony.

Appellant's Brief at 14–20.

This Court granted Appellant's request for additional time, noting that no further extensions would be granted. *See Per Curiam* Order, 2/8/2011. Regarding the allegations of transcript tampering, this Court ordered Appellant's counsel to obtain relief from the trial court, pursuant to Pa.R.A.P. 1922, and if such effort was unsuccessful, to raise the issue in his brief. *Id.*

On March 23, 2011, Appellant again petitioned this Court for relief, alleging that he had requested the audio recording from the stenographer directly but was informed by the stenographer that the trial court would not permit the recording to be

released. Application for Relief, 3/23/2011, at 3. Appellant requested that this Court "(i) [o]rder the trial stenographer to immediately produce to Appellant's counsel a copy of the audio recording of the entire trial and to (ii) grant a 60–day extension upon receipt to file Appellant's Brief," alleging that he could not prepare Appellant's appeal without an accurate transcript. *Id.* at 2. On March 24, 2011, this Court denied Appellant's request.

■ We note with extreme displeasure that counsel did not address his claims with the trial court, despite this Court's express Order to do so.[7] Objections to the trial transcript are properly settled in the lower court. *See* Pa.R.A.P. 1922(a). On May 2, 2011, the trial court filed a supplemental 1925(a) opinion, wherein it stated it was made aware of counsel's allegations upon review of Appellant's brief to this Court in April of 2011. The trial court confirmed that counsel failed to seek relief with the trial court pursuant to Pa.R.A.P. 1922(a) or Rule 1926 (related to corrections or modifications to the record). Nonetheless, the trial court *sua sponte* filed a supplemental opinion to address these allegations and provided counsel with the court recordings of trial concerning two of his motions.

We are admittedly troubled by counsel's accusations that the trial court somehow was responsible for altering the notes of testimony. Appellant's limited proof, that is, his own recollection and his representation that the court stenographer made a comment suggesting that counsel request the audio recordings of trial, are hardly sufficient to justify this type of claim, particularly in a case where the relevant audio recordings **were** provided *sua sponte*. Inexplicably, in a case where counsel repeatedly asserts violations of his client's rights, he has managed simultaneously and repeatedly to ignore the proper procedure to address those claims.

■ Accordingly, as counsel flouted proper procedure, and this Court's express order, by declining to address the allegedly deficient transcripts with the trial court, we deny his request for production of the audio recording and "floppy disk" of trial testimony, as well as his request for a new trial because of allegedly altered transcripts. Further, because a transcript has been provided, and because counsel's claim affects the placement of objections and motions, as opposed to material alterations to or elimination of any witness testimony, we are not precluded from conducting a meaningful review of Appellant's issues on appeal. *See Lyons, supra.* Thus, we will consider his substantive claims.

In his first substantive issue, Appellant argues that the trial court erred in denying his motion for a mistrial made during jury selection following an outburst from a potential juror that was overheard by other potential jurors in the venire. Appellant's Brief at 30. Appellant's challenge is two-fold. First, he claims that he was prejudiced by the nature and content of the outburst itself. Additionally, Appellant argues more than six jurors necessarily heard the outburst but "would not/did not come forward and be forthright with [the trial court]." Appellant's Brief at 30–31.

---

**7.** Counsel disingenuously claims to this Court that he "has not been able to obtain relief from the trial [court]." Appellant's Brief at 11. However, the certified record in this case demonstrates that he did not file a motion under Pa.R.A.P. 1922, or any other rule, in order to address his allegations with the trial court. However, the· certified docket **does** evidence trial counsel's petitions to the lower court for payment of attorney fees related to this appeal which are dated after the entry of this Court's February 8, 2011 order.

**218**

■ It is well-settled that "[a] defendant has the right to have his case heard by a fair, impartial, and unbiased jury and contact among jurors, parties, and witnesses is viewed with disfavor." *Commonwealth v. Brown*, 567 Pa. 272, 786 A.2d 961, 972 (2001). However, "[t]he decision to declare a mistrial is within the sound discretion of the [trial] court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy ... [that] ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Bracey*, 831 A.2d 678, 682–683 (Pa.Super.2003), (*quoting Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 250 (1997)).

In the instant case,

[o]n the third day of jury selection, a prospective juror (No. 700) caused a minor commotion in the rear of the courtroom. Juror No. 700 complained to [the trial court's] law clerk about the wait and said he was going to leave. He further stated that he had already made up his mind, because "[Appellant is] fucking guilty anyway." The [trial court's] law clerk placed Juror No. 700 back in his seat and informed [the trial judge] of his comments. The Sheriff was directed to remove Juror No. 700 from the courtroom and informed all counsel of the disturbance.

Immediately thereafter, [the trial court] questioned the entire jury pool regarding the disruption. Only six jurors heard the exchange; those jurors were then sequestered from the rest of the pool. After the jurors had been interviewed, [Appellant], through his counsel, moved for a mistrial. [The trial court] denied the motion, finding that Juror No. 700's comments did not im-

pact the ability of the jury pool to produce a panel of fair and impartial jurors. Trial Court Opinion, 6/9/2010, at 39–40 (citations to Notes of Testimony omitted).

Our Supreme Court addressed a similar issue in *Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152 (1997). In that case, a member of the venire stated, within the earshot of other potential jurors, that he "knew one of the victims and that drugs were involved in the crime." *Id.* at 1159. The man went on to inform " 'a goodly portion' of the jury that he was a friend of both victims, that he was at the crime scene and that there had been drugs at the crime scene." *Id.* The trial court immediately conducted an inquiry into the situation, asking each prospective juror present in the hallway whether he or she had overheard the comment. The colloquy revealed that the comments were heard by six other prospective jurors in the hallway outside the courtroom. Of those six, only two had actually heard the entirety of the exchange. Those two, and the speaker, were stricken for cause. The remaining four prospective jurors were not seated in the jury. Our Supreme Court upheld the trial court's refusal to dismiss the entire venire under these circumstances, finding that the appellant had "failed to demonstrate that any of the jurors who actually heard his case had been exposed to the comments in question." *Id.* at 1160.

■ Similarly, in the instant case, Juror No. 700 was immediately removed from the courtroom and the trial court conducted a colloquy of the remainder of the venire. Appellant's counsel was provided the opportunity to question the prospective jurors as to whether they heard Juror No. 700's comments. This process revealed that six prospective jurors were aware of the outburst. Those six were separated from the rest of the venire and were not empaneled. Under these circumstances,

we determine that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

■ To the extent Appellant suggests that more than six prospective jurors necessarily heard the outburst and members of the venire were untruthful with the trial court, we find no basis for this allegation in the record. The trial court explained,

> Jury selection in this case was a lengthy process and jurors can become uncomfortable when sitting in their assigned seat on the hard, wooden benches. [The trial court's] staff permitted the prospective jurors to walk around the courtroom to stretch and converse with one another.
>
> In fact, [the trial court's] law clerk testified that Juror No. 700 approached him at the extreme rear of the courtroom, away from his seat. Therefore, because jurors were at their leisure to roam the courtroom gallery, it is unsurprising that the prospective jurors who heard the outburst were not necessarily seated with one another. For example, Juror No. 991 testified that she was standing next to Juror No. 700 in the back of the courtroom before he entered into a dialogue with the law clerk. Likewise, as Juror No. 616 testified, Juror No. 700's voice may have dropped or some jurors may not have paid any attention to the conversation. While the law clerk estimated that a slightly larger group could have heard the statement, it was hardly a certainty. Only when the entire pool was questioned could [the trial court] and the parties verify who heard Juror No. 700.

Trial Court Opinion, 6/9/2010, at 41–42. Regardless, counsel for Appellant was given the opportunity to question prospective jurors following the incident and, most importantly, the jurors ultimately empaneled were not affected by Juror No. 700's com-

ments. Based on the foregoing, we conclude that Appellant's first substantive claim of error is without merit.

■ Appellant next argues that the trial court erred in denying his motion for a mistrial following an incident where a Commonwealth witness spoke directly to jurors during a court recess. Appellant's Brief at 26. Before we reach the merits of Appellant's argument, we must address whether this issue has been properly preserved. See Pa.R.A.P. 302; Pa.R.Crim.P. 605(B) (a motion for mistrial shall be made at the time the event prejudicial to the defendant occurs).

The trial court finds this claim waived because Appellant waited a substantial period before making his motion. Trial Court Opinion, 6/9/2010, at 46–47; see Commonwealth v. Honesty, 850 A.2d 1283, 1286 (Pa.Super.2004). Appellant claims his lengthy motion for a mistrial was timely, but was moved to a later portion of the transcript and parsed down to one sentence. Appellant's Brief at 18. A review of the audio recordings of the trial belies Appellant's claim. See Audio CD, 9/23/2009; Commonwealth v. Wilder, 259 Pa.Super. 479, 393 A.2d 927, 929 (1978) (holding that without further evidence, that the transcript accurately reflects the proceedings at trial). In any event, the timing of Appellant's motion is essentially immaterial as he is not entitled to relief on the merits of his claim.

■ On the third day of trial, during the lunch recess, court staff informed the trial court that Commonwealth witness Dennis Hawkins (Hawkins) had made statements to the jury on the steps of the courthouse. Hawkins, who had taken the stand that morning, testified that he was housed in the Special Housing Unit (SHU) of the Washington County jail with Appellant, and while incarcerated. Appellant con-

fessed to Hawkins that he had killed the victims. During the court lunch break, Hawkins approached Juror No. 715 and stated, "[Appellant] told me everything he did in the SHU. He told me it all. He had [the victim] down and he was kicking her." Appellant's Brief at 31. Appellant essentially argues that this comment was so prejudicial that the only way to remedy the situation was to declare a mistrial.

Once again, we review the trial court's determination for an abuse of discretion. *See Bracey, supra.*

> [E]x parte contact between jurors and witnesses is viewed with disfavor. *Commonwealth v. Brown,* 567 Pa. 272, 786 A.2d 961, 972 (2001). There is, however, no *per se* rule in this Commonwealth requiring a mistrial anytime there is improper or inadvertent contact between a juror and a witness. *See Commonwealth v. Mosley,* 535 Pa. 549, 637 A.2d 246, 249 (1993) (declining to adopt *per se* rule which would require disqualification of juror anytime there is *ex parte* contact between that juror and witness). Whether such contact warrants a mistrial is a matter addressed primarily to the discretion of the trial court. *Brown,* 786 A.2d at 972 (citation omitted).

*Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 532–33 (2003). Additionally, "explicit in the cases involving juror contact is the requirement that the defendant show that he was prejudiced." *Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974); *see also Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972).

Here, the trial court conducted a colloquy of the jury to determine what, if anything, each juror heard and whether the incident affected his or her ability to be fair and impartial. The colloquy revealed that only Juror No. 715 heard Hawkins' comments. Each juror, including No. 715, indicated that his or her impartiality was not affected by the outburst. The trial court found the jury's assurances credible. Trial Court Opinion, 6/9/2010, at 49. Moreover, as the trial court notes, "the comments of [Hawkins], while improper, did not constitute non-testimonial information. Rather his comments about the [SHU] and [the victim] being kicked only referred to testimonial information that the jury had already heard." *Id.* at 48–49. Under these circumstances, Appellant has failed to prove that he was prejudiced and we cannot conclude that the trial court abused its discretion in denying Appellant's motion for a mistrial. Thus, we hold that Appellant is not entitled to relief on his second substantive claim.

Appellant next argues that the trial court erred in denying his motion for a mistrial following certain comments made during the prosecutor's closing arguments. Appellant's Brief at 8. Once more, the claim presented is two-fold. First, Appellant contends that the prosecutor impermissibly shifted the burden of proof to Appellant, thereby entitling him to a new trial. Appellant further claims that the jurors disregarded the trial court's curative instruction, which caused Appellant to suffer additional prejudice. Appellant's Brief at 33–35.

■ Once more we must initially consider whether Appellant's motion was timely. *See* Pa.R.Crim.P. 605(B). Appellant contends that at the end of the prosecutor's closing on September 29, 2009, he immediately made his oral motion for a mistrial. Appellant's Brief at 19. He argues that this motion should have been located at page 80 of the transcript from September 29, 2009. *Id.* Instead, the motion is found on page 90. Again, the audio recordings provided to this Court contradict Appellant's claim. *See* Audio CD, 9/29/2009. While the trial court is correct, that waiver would be appropriate under these circum-

stances, again we reach the conclusion that, even if Appellant's motion were timely, he is not entitled to relief.

■■■ A prosecutor must be permitted to respond to arguments made by the defense. *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 237 (2006). Thus, it is well-established that a prosecutor is permitted wide latitude to advocate the Commonwealth's case, and may properly employ a degree of rhetorical flair in so doing. *Commonwealth v. Beasley*, 544 Pa. 554, 678 A.2d 773, 780 (1996). Further,

> [a] new trial is not mandated every time a prosecutor makes an intemperate or improper remark. To constitute reversible error, the language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict.

*Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101, 1109 (1988).

At trial, Appellant testified that, while he agreed to the robbery, co-defendant Tartt was the actual shooter and that Appellant was merely involved to set up the meeting with the Springers. Appellant testified that, once in the Springers' home, Mr. Springer refused to comply with Tartt's demands to get on the ground. At that point, Appellant claimed he ran from the victims' home and was halfway out the door when he heard the gunshots. He further testified that Tartt forced him at gunpoint to remove the cash from Mr. Springer's pocket. He then observed Tartt assault and kill Mrs. Springer. Appellant testified that he was unarmed and only Tartt had a weapon, which he employed on both victims. Appellant claimed he and Tartt left the scene together in Appellant's pickup truck, with Appellant driving and Tartt in the passenger seat.

In his closing argument, Appellant's counsel asked the jurors to consider the possibility that co-defendant Tartt was the actual shooter in light of testimony that he went into hiding following the deaths of the Springers. N.T., 9/29/2009, at 5.

Counsel went on to criticize investigators for failing to fingerprint the passenger side door of Appellant's pickup truck, in light of testimony from a neighbor who claimed that she observed Appellant's truck parked in front of the Springers' home with two men inside on the day of the shooting.

> And let me tell you something, if the prosecutor stands up here and says, well, [Appellant's counsel] talked about fingerprints and, well, that's TV. That's the CSI shows. No, no. The only thing that is unrealistic about those CSI shows, the only thing that's unrealistic, is that they will squeeze an investigation that took a couple years or a year into 40 minutes and then plus the commercials. They just crunch it all together and make sure it happens fast.
>
> But let me tell you, folks, state police and police officers actually do fingerprint passenger side door handles in murder cases in America when they have reliable information that the shooter could have been in that—in there.[ . . . ]
>
> But I asked [Trooper Petrosky], okay, what about the interior of the truck? You pull the door, the interior door handle, you shut the door, fingerprints could have been there. Not tested. For some reason rolling down the window, rolling up the window, it was manual, fingerprinted. Never tested. The seatbelt, the male component, female component, metal surface, good surfaces to get fingerprints from. Never ·fingerprinted.

It would have taken 20 minutes to do that. The crime lab is 20 minutes up the street in Greensburg from the Belle Vernon Barracks. Never done. Was this a search for the truth?

N.T., 9/29/2009, at 17–18. Counsel went on to argue that various areas of Appellant's vehicle were not forensically tested for traces of blood. N.T., 9/29/2009, at 20–21.

In his closing argument, the prosecutor remarked

Now, the defense makes much to do about didn't take I guess blood samples from the passenger's side of the truck, and I'll get to that later. But the defendants had access to all the evidence in this case and the defendants certainly could have taken their own tests if they wanted to, they could have taken if they wanted to.

 \* \* \*

A few more points. The defendant says that—or the defense says we didn't call Vaughn Crews or Winter Clark. Well, the defense had equal access to these folks. They have the subpoena power. They have investigators. They can do what they want to do. [ . . . ]

N.T., 9/29/2009, at 75, 76.

 We disagree with Appellant that the prosecutor's comments here improperly suggested that Appellant had a burden of production or persuasion. Nevertheless, to the extent that they were not a fair response to trial counsel, we note that the trial court issued a cautionary instruction[8] to the jury regarding the prosecutor's remarks:

I want to caution you, again, which way back when we started, I told you that every defendant comes into the courtroom presumed innocent, every one, until such time, if ever, the jury decides unanimously that the Commonwealth has proven its case on each and every element of the crime or crimes against the defendant beyond a reasonable doubt.

I also told you the defendant does not have to do anything. They can just sit in their—and listen to the government—in their chair and listen to the government's evidence.

The defendant in his defense did not have to bring in anyone to the courtroom or any evidence to the courtroom. That includes the fact that maybe there might be some other witness or some other witness or some other evidence that was available, but is not upon the defendant to go out and do tests because they do not have to do anything.

I realize that [the prosecutor] was trying to respond to something [Appellant's counsel] told you in his closing, but I wanted to caution you about that and remind you that the defense does not have to bring anybody in here. I did not consider it appropriate not to give you a cautionary instruction about that, even though that was inadvertently alluded to you.

N.T., 9/29/2009, at 95–96.

Although he admits that the court properly gave the above curative instruction, Appellant argues that his client was prejudiced because "a juror came forward the morning after the verdict and produced a sworn affidavit" indicating that the panel disregarded the instruction during its deliberations. Appellant's Brief at 34. Specifically, Appellant claims that on October

---

**8.** *See Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 539 (1999) (prosecutor's improper remark did not justify the grant of a new trial since "the trial court had repeatedly instructed the jurors that the arguments of counsel are not evidence, and that they must base their verdict solely on the evidence presented to them").

2, 2009, the day after the verdict was entered, Juror No. 12 contacted Appellant's counsel's office and spoke with the secretary. According to the secretary's notes of the conversation, Juror No. 12 was upset about the verdict and intimated that he was treated unfairly by the other jurors and was forced and coerced into finding Appellant guilty of second degree murder. Further, Juror No. 12 stated that a member of the panel ignored the trial court's curative instruction regarding improper remarks made during the Commonwealth's closing argument. Finally, Juror No. 12 admitted that on an evening during deliberations he asked his daughter to locate jury instructions for first, second and third degree murder on the internet and read them to him. His daughter complied and also read to him a definition of fourth degree murder. Thus, Appellant contends he is entitled to an evidentiary hearing on these issues and, ultimately, a new trial.

 We consider these serious allegations mindful of the following principles. "A juror is incompetent to testify as to what occurred during deliberations." Pa. R.E. 606(b) [9]; *Carter v. U.S. Steel Corp.,* 529 Pa. 409, 604 A.2d 1010, 1013 (1992). This is often referred to as the "no impeachment rule." *Id.*

> We cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct. To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence. Jurors cannot impeach their own verdict. Their deliberations are secret and their inviolability must be closely guarded. Only in clear cases [of] improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted.

*Commonwealth v. Messersmith,* 860 A.2d 1078, 1084–1085 (Pa.Super.2004) (quoting *Commonwealth v. Pierce,* 453 Pa. 319, 309 A.2d 371, 372 (1973)).

There exists a narrow exception to the no impeachment rule. The exception allows post trial testimony of extraneous influences which might have affected (prejudiced) the jury during their deliberations. **Extraneous information has been defined as information that was not provided in open court or vocalized by the trial court via instructions.** Under the exception to the no impeachment rule, a juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations. Under no circumstances may jurors testify about their subjective reasoning processes.

\* \* \*

**9.** The Rule provides:

> **"(b) Inquiry into validity of verdict.**
> Upon an inquiry into the validity of a verdict, including a sentencing verdict pursuant to 42 Pa.C.S. § 9711 (relating to capital sentencing proceedings), a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions in reaching a decision upon the verdict or concerning the juror's mental processes in connection therewith, and a juror's affidavit or evidence of any statement by the juror about any of these subjects may not be received. However, a juror may testify concerning whether prejudicial facts not of record, and beyond common knowledge and experience, were improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."
>
> Pa.R.E. 606(b).

Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. **In determining the reasonable likelihood of prejudice, the trial judge should consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature.** This Court has held that where the extraneous evidence is not new, but rather is evidence that was presented at trial, prejudice is not established.

Because a trial judge may not consider evidence regarding the subjective impact of an extraneous influence on any juror, it has been widely recognized that the test for determining the prejudicial effect of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence.

*Id.* at 1085 (emphasis added).

 The trial court addressed Appellant's claim in a Memorandum and Order filed October 12, 2009 and concluded that a hearing was not necessary with respect to Juror No. 12's claims of coercion or disregarded jury instructions as "controlling authority holds that Juror No. 12 is incompetent to testify about 'inside influences' which affected his vote during the jury's deliberations." Memorandum and Order, 10/12/2009, at 4. We find no error in this assessment.

 With regard to Juror No. 12's admission that he had his daughter conduct internet research on his behalf regarding the various definitions of murder, the trial court concluded that Appellant failed to meet his burden of proving that the information was emotional or inflammatory in nature, under the three-prong analysis outlined in *Messersmith, supra.* Memorandum and Order, 10/12/2009, at 6. We agree. *See Boring v. LaMarca,* 435 Pa.Super. 487, 646 A.2d 1199, 1203–1204 (1994) (holding that juror's outside research into definition of term "good faith" was neither emotional nor inflammatory).

Additionally, *Messersmith* requires us to consider whether the extraneous influence provided the jury with information they did not have before them at trial. Instantly, the jury had been instructed properly on first and second degree murder by the trial court. Thus, we cannot conclude that the definitions of these crimes provided by Juror No. 12 constituted new information not provided to the jury during trial.

In sum, we hold that the comments by the prosecutor during his closing argument were made in fair response to counsel's summation and any error was cured by the trial court's instruction. To the extent that Appellant challenges the jury's verdict on appeal, we find his argument unavailing in light of controlling precedent and conclude that Appellant has not demonstrated that he has been prejudiced so as to warrant a new trial.

Appellant next argues that the trial court erred in "giving an incomplete and misleading jury instruction regarding unanimity of the verdict in response to a question from jurors during deliberations." Appellant's Brief at 8. During deliberations the jury sent a note to the trial court asking "Do we have to have a unanimous decision in all the charges put in front of us? What happens if we do not have this?" N.T., 9/30/2009, at 21; Court Ex-

hibit 7. In response, the trial court sent a note back to the jury room advising, "Yes, all charges are to be unanimous." Appellant claims that he objected to this instruction during sidebar immediately following the trial court's response and that his objection should appear on page 22 of the September 30, 2009 transcript. Appellant's Brief at 20. He now accuses the trial court and/or the court stenographer of removing his objection from the transcript. *Id.*

■ Although the premise is similar to the other "missing objections" issues set forth in Appellant's brief, this situation differs in that Appellant alleges his objection is missing entirely and not moved to a later portion of the notes of testimony. Additionally, Appellant contends he made his objection at sidebar, a situation made problematic by the fact that the court reporter did not bring her audio recording device to sidebar and thus there is no audio recording to compare to the transcript. Absent evidence to suggest that the court reporter erroneously transcribed the sidebar discussions, we are constrained to find this issue waived under the rationale of *Wilder, supra; see also Commonwealth v. Moury*, 992 A.2d 162, 179 (Pa.Super.2010) ("a specific and timely objection must be made to preserve a challenge to a particular jury instruction").[10]

Due to the circumstances of this case, we feel compelled to note that, even if Appellant's claim were properly preserved it would not merit him relief.

In light of our conclusions regarding Appellant's first twelve issues, we deny Appellant's thirteenth claim on appeal (*see* page 5 of this Opinion), as it is dependent on the success of his first twelve issues.

■ Appellant next claims that the trial court erred in denying his pre-trial motion to suppress. Appellant's Brief at 9. Specifically, Appellant argues that his statement to police and photographs taken by Pennsylvania State Police (PSP) should have been suppressed as they were obtained in violation of Pa.R.Crim.P. 516 and the "six-hour rule". Appellant's Brief at

---

10. The trial court clarified its instruction before deliberations resumed on October 1, 2009, the day after the jury submitted question number 7, stating

First I want to say that you sent out a question yesterday and we had some discussion about it and then I sent an answer back. Your question was "Do you have to convict on all charges, and what happens if you do not." I answered the question as yes, but after I thought about it, it might have caused you some confusion because I want to further explain to you that your decision on every verdict must be unanimous, as I already told you. But it can be unanimous as not guilty or guilty on every charge, and that is what I meant when I sent it back and said yes, you must continue to do that because your duty here is to reach a fair and just verdict after considering all of the evidence and determining whether or not the Commonwealth has proven the defendant guilty beyond a reasonable doubt on each and every element of each crime that we gave you verdict slips for.

So I did not want to give you—to confuse you on that. I wanted to make sure you understood that every one of those verdict slips you have, you have to determine unanimously, if your conscience allows you to do that, whether the defendant is not guilty or guilty on each charge.

So if I gave you the impression that all of your verdicts have to be exactly the same one way or the other, I did not mean to confuse you, that is not correct, and I wanted to clarify that.

N.T., 10/1/2009, at 3–4. The trial court then called a sidebar wherein it explained the rationale behind its clarifications. At no time did counsel for Appellant make an objection to the clarification. Our decision to find Appellant's challenge waived for failure to preserve the issue via timely objection is bolstered by counsel's silence during this second sidebar.

38–39. A review of Appellant's brief reveals the whole of his argument in support of this allegation to be the following:

> The trial [c]ourt erred in denying Appellant's suppression motion regarding the statement and photographs which were taken because they were taken in violation of the six hour rule, Appellant's right to a prompt preliminary arraignment and also because he was unlawfully in custody of the Pennsylvania State Police.
>
> [Appellant] was taken into custody by the Pennsylvania State Police after Rostraver Township Police Department obtained an arrest warrant for the Appellant on an unrelated charge. He was taken into custody at 2:00 p.m. and interrogated continuously by the State Police about the murders in this case until 11:00 p.m. The Commonwealth failed to afford [Appellant] a Preliminary Arraignment on the Theft/RSP charges without unnecessary delay as required by **Pennsylvania Rule of Civil Procedure 516.**[11]
>
> **Rule 516 states as follows:**
>
> **(A) When a [d]efendant has been arrested in a court case, with a warrant, within the judicial district where the warrant of arrest was issued, the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.**
>
> At no time did Rostraver Township Police nor the State Police take Appellant to his preliminary arraignment, despite admitting that they could have done so (*See testimony of Trooper Brian Barnhart, Suppression Hearing*).
>
> The lower [c]ourt cites *Commonwealth v. Perez* [577 Pa. 360], 845 A.2d

779 (Pa.2004) in its trial opinion in support of its holding, and claims that insufficient evidence existed to support the allegation that the statement was not a product of Appellant's free will. To the contrary, [Appellant] testified as to the following:

> a. Members of the PSP engaged in physical and psychological coercion of [Appellant] by touching/grabbing/handling/pulling on the talisman of a necklace Szakal was wearing while interrogating him. Further, while doing so, they put their faces inches from his face when interrogating him;
>
> b. The prolonged nature of the interrogation—approximately 8 hours;
>
> c. [Appellant] was denied the right to call his mother/family members;
>
> d. [Appellant] was repeatedly screamed at and told he was a liar.
>
> Accordingly, the trial court's findings of fact were not supported by the trial record. [Appellant's] right to a speedy preliminary arraignment was violated, he was unlawfully in the custody of the Pennsylvania State Police, and his rights under the 6 hour rule were violated. Therefore, his statement and the photographs taken of him should have been suppressed. Appellant requests a new trial with this evidence to be held inadmissible against him at re-trial.

Appellant's Brief at 36–38 (italics and bolding in original) (footnote added).

Appellant's claim fails as the six-hour rule has been abrogated in favor of a totality of the circumstances analysis. As the trial court ably explained,

> [Appellant] insists that his statement was taken in violation of the prompt

---

11. Appellant inadvertently states that Rule 516, entitled "Procedure in Court Cases When Warrant of Arrest is Executed Within Judicial District of Issuance," is a Rule of Civil Procedure. Appellant's Brief at 38. It is a Rule of Criminal Procedure.

arraignment rule as embodied in *Commonwealth v. Davenport* [471 Pa. 278], 370 A.2d 301 (Pa.1977). That case and its progeny fashioned a bright-line, mechanical rule in determining whether [the] accused was unnecessarily delayed in being afforded a prompt arraignment. If the defendant was not arraigned within six hours of arrest, then any statement obtained after but before arraignment was not admissible at trial. *Id.* at 306. The rule was later modified to allow admission of statements that were made by an accused within six hours of his arrest, regardless of when the arraignment occurred. *Commonwealth v. Duncan* [514 Pa. 395], 525 A.2d 1177, 1182 (Pa.1987).

Contrary to [Appellant's] assertions, *Davenport* is no longer the law as it was overruled by our Supreme Court in *Commonwealth v. Perez* [577 Pa. 360], 845 A.2d 779, 786–787 (Pa.2004). The *Perez* court held that "voluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se*." *Id.* at 787. Rather, trial courts must apply a totality of the circumstances test to conclude "whether a pre-arraignment statement was freely and voluntarily made, and therefore admissible." [*Commonwealth v.*] *Sepulveda* [579 Pa. 217], 855 A.2d [783] at 792–93 [ (Pa.2004) ].

The relevant factors include: (1) the attitude exhibited by the police during the interrogation; (2) whether the defendant was advised of his constitutional rights; (3) whether he was injured, ill, drugged, or intoxicated when he confessed; and (4) whether he was deprived of food, sleep, or medical attention during the detention. *Id.* at 793.

Trial Court Opinion, 6/9/2010, at 10–12.

Appellant completely ignores the "totality of the circumstances" test as set forth by *Perez.* He fails to cite to the record. He fails to articulate how he was prejudiced by the admission of either his statement or any photographs. *See Commonwealth v. Sepulveda,* 579 Pa. 217, 855 A.2d 783, 792–793 (2004). Thus, we find Appellant's claim waived for failure to articulate and develop it for review. *Commonwealth v. Herrick, Sr.,* 442 Pa.Super. 412, 660 A.2d 51, 58 (1995).

We turn to Appellant's final claim of error: that the lower court erred in denying Appellant's request to call Dr. Debra Davis, an expert in the field of false confessions, to testify in this case. Appellant's Brief at 39.

 Our standard of review is as follows:

[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Grady v. Frito–Lay, Inc.,* 576 Pa. 546, 839 A.2d 1038, 1046 (2003) (citations omitted). The admissibility of an expert opinion is governed by Rule 702 of the Pennsylvania Rules of Evidence:

**Rule 702. Testimony by experts**

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may

testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

■ Instantly, the trial court determined that, while Dr. Davis' scientific methodology was generally accepted in the field of false confessions, her testimony would not be of any assistance to the triers of fact "given that the jurors, during *voir dire*, admitted that they already knew false confessions occur." Trial Court Opinion, 6/9/2010, at 26. The trial court reasoned as follows:

> Despite Dr. Davis being qualified as an expert by knowledge, skill, experience, training, or education, her testimony still failed to satisfy Rule 702 in these particular circumstances. It is clear that expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue on a subject beyond the understanding of the average juror. An expert's function is to assist the jury in understanding the problem so that the jury can make the ultimate determination.
>
> Basically, the defense in this case was that [Appellant] lied in his recorded statement to police about his role in the murders of Mr. and Mrs. Springer. He claimed to be telling the truth when he took the stand and implicated his co-defendant, Mr. Tartt, as the trigger man. In other words, [Appellant] asked the jury to believe that he falsely confessed to the murders. The issue then, is whether the average juror, in this case, needed to be told that false confessions occur? This [c]ourt found that the

jury did not; as almost every juror in the pool indicated that [he or she] believed that false confessions do occur. In fact, defense counsel raised that point in his closing argument.

> Moreover, if the expert is only testifying generally about the fact that false confessions happen, that is well within the grasp of the average layperson and expert testimony would not be required under Rule 702. The components of a false confession, according to Dr. Davis, include factors such as the interrogation tactics employed, the training of the law enforcement personnel involved, and the stress tolerance of the suspect. This [c]ourt found that testimony concerning these factors can be elicited (and attacked) through the testimony of other witnesses and is capable of being understood by the average juror. The jury can then make its own determination as to the weight afforded to the defendant's confession. Therefore, Dr. Davis' testimony was not proper because expert testimony is inadmissible when the matter can be described to the jury and the conditions evaluated by them without the assistance of one claiming to possess special knowledge upon the subject.

Trial Court Opinion, 6/9/2010, at 30–32 (citations omitted). We find no error with the trial court's analysis and ultimate decision to preclude Dr. Davis' testimony as it would not assist the trier of fact.

■ Additionally, we agree with the trial court that any error in denying Appellant's motion was harmless.[12] Appellant's conviction for second degree murder makes it clear that the jury disbelieved

---

12. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted

evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Hutchinson*, 571 Pa. 45, 811 A.2d 556, 561 (2002) (*quoting Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1999)).

Appellant's confession to first degree murder. Rather, the jury **believed** Appellant's testimony that he conspired with co-defendant Tartt to commit a robbery during which the Springers failed to cooperate and were subsequently murdered.[13] Thus, we conclude any error in excluding the expert testimony could not have contributed to the verdict. *See Hutchinson, supra.*

Accordingly, having determined that Appellant's substantive claims on appeal merit him no relief, we affirm the judgment of sentence in this matter.

Judgment of sentence affirmed.

---

13. Section 2502 of the Crimes Code provides, in relevant part, as follows:

 **(b) Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

 **(d) Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

 **"Perpetration of a felony."** The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

 18 Pa.C.S. § 2502(b), (d).