J-S39037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN LEEMON HARRIS | : | |
| | : | |
| Appellant | : | No. 795 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 5, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0001954-2021

BEFORE:    DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: DECEMBER 22, 2023**

Kevin Leemon Harris (Appellant) appeals from the judgment of sentence entered in the Schuylkill County Court of Common Pleas following his jury convictions for, *inter alia*, attempted first-degree murder.[1]  Appellant's sole issue on appeal relates to a juror commenting, apparently to another juror, during Appellant's trial testimony.  Appellant claims that the trial court erred in denying his motion for a mistrial.  We affirm.

The detailed facts underlying Appellant's convictions are not relevant to the legal issue presented.  As it pertains to his appellate claim, Appellant testified in his own defense, during which he discussed issues with his car.  On cross-examination, Appellant admitted that he had supplied his brother and

_____

[1] 18 Pa.C.S. §§ 901(a), 2502(a).

three other individuals with "methamphetamine and weed." N.T. Jury Trial Vol. II, 3/7/23, at 416. The Commonwealth asked, "Okay. Where did the methamphetamine and the weed come from? . . . . Like, did you have it on you or was it in your room?" *Id.* Appellant explained that he took the drugs inside his mother's house because he could not lock his car door, as his key fob was missing. *Id.* at 417. At that moment, a juror interjected, and Appellant responded to him, as follows:

> [APPELLANT]: So when I told you I got my stuff out of my car, I didn't have my key fob. So I couldn't lock my door. . . . So I brought my bag in my mom's house.
>
> JUROR NO. 4: Just push the lock button.
>
> [APPELLANT]: I wouldn't have been able to unlock it then. See, I could have pushed the lock button, but then would have been locked out.

*Id.*

The following exchange occurred immediately thereafter:

> [COMMONWEALTH:] Judge, you might want to say something here.
>
> [APPELLANT'S COUNSEL]: I don't know what happened.
>
> THE COURT: I was taking notes. You're talking directly to the jury.
>
> Juror No. 4, did you say something to your neighbor?
>
> JUROR NO. 4: Just all he had to do was push it down, push the button.
>
> THE COURT: Push his hand down?

- 2 -

[APPELLANT]: No. He said all I had to do was push the lock button. But then I would have been locked out of my car.

THE COURT: You can't — I'm going to instruct everyone to disregard what just happened. You cannot say things like that.

In my instructions I told you, you are not to talk about the case with anyone. You're to pay attention and listen to everything that's said. . . .

N.T., 3/7/23, at 417-18.

The trial court then directed a sidebar discussion, at which the court asked the attorneys, "What do you want to do with No. 4?" N.T., 3/7/23, at 418. Appellant requested a mistrial, arguing that Juror No. 4 was "talking to another juror, contradicting the testimony of [Appellant]." *Id.* The court declined to grant a mistrial but concluded that dismissal of Juror No. 4 was warranted. *Id.* The parties were not sure, however, if Juror No. 3, to whom Appellant had apparently directed the comment, said anything in response. *Id.* at 419. The Commonwealth stated, "I think [Juror] No. 3 just kind of, like, shook his head yes. He didn't verbalize any response." *Id.* The court again expressed reluctance to declare a mistrial: "I don't think we need to do that. It was only those two that were involved." *Id.* Appellant then stated, "[Y]ou may have to ask Juror No. 3, did this have any effect on him. He did nod, but that could mean many different things." *Id.*

The trial court then excused all the jurors but numbers three and four. The court informed Juror No. 4 he would be excused but did not ask him any questions. The court then asked Juror No. 3, "[D]id you hear what he said to

- 3 -

you?" N.T., 3/7/23, at 421. Juror No. 3 confirmed that he did, and the court asked additional questions:

> THE COURT: Juror No. 3, did you respond in any fashion?
>
> JUROR NO. 3: No.
>
> THE COURT: The attorneys thought that they saw you shake your head or nod.
>
> JUROR NO. 3: I guess. I mean, I definitely looked over at him and I looked on the witness stand.
>
> THE COURT: Did you acknowledge to Juror No. 4 the comment that he made to you?
>
> JUROR NO. 3: Maybe nonverbally I shook my head like, Why would you say that? Because then it started that [sic].
>
> THE COURT: Do you feel that the comment that he made taints your ability to remain impartial?
>
> JUROR NO. 3: No.

*Id.*

The parties declined to ask Juror No. 3 any questions. The court asked Appellant if he were seeking removal of Juror No. 3, and Appellant replied that he was not. Appellant did not renew his request for a mistrial or ask to make inquiry of any other juror. N.T., 3/7/23, at 422.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

Appellant now raises one issue on review:

- 4 -

Whether the trial court committed reversible error, when it failed to declare a mistrial upon request of Appellant's counsel after a seated juror acted improperly by openly questioning [Appellant] during his testimony, which unduly prejudiced the Appellant and resulted in an improper verdict.

Appellant's Brief at 5.

Appellant

We reproduce Appellant's entire counseled argument:

It is well established that the discharge of a juror is within the sound discretion of the trial court and that determination will not be reversed absent an abuse of that discretion. **Commonwealth v Jennings**, 285 A. 2d 143 ([Pa.] 1971)[;] **Commonwealth v. Bent**[**ley**], 135 [A.] 310 ([Pa.] 1926). Additionally, "A fair trial in a fair tribunal is a basic requirement of due process". **Ervin v. Dowd**, 366 U.S. 717 . . . (1961).

In this particular case, while the Appellant was testifying, juror number four made an inappropriate comment to juror number three concerning the testimony of the Appellant. While the juror was not asking the Appellant questions per se, **the juror was openly questioning the credibility and truthfulness of the Appellant's testimony.** At the time of the trial, the Appellant was discussing his automobile and his inability to open the doors of his automobile. Juror number four stated to jury number three, out loud, "Just push the lock button." In response, juror number three nodded his head in agreement. While the [t]rial [j]udge did later dismiss juror number four and placed an alternate juror in his place, the damage had already been done.

Appellant's counsel was unable to find case law addressing the exact scenario that had occurred in the instant appeal. However, given the circumstances, the [t]rial [c]ourt's power to grant a new trial is inherent in the court, and the decision to grant or deny a new trial rests within its sound discretion. **Kralik v. Cromwell**, 258 A 2d 654 ([Pa.] 1969). Additionally, a mistrial in a criminal proceeding is governed by Rule 605(b) of Pennsylvania Rules of Criminal Procedure, which is as follows: "When an event prejudicial to the Defendant occurs during trial only the Defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may call a mistrial only for

reasons of manifest necessity". In this case the Appellant's attorney timely requested a mistrial when the prejudicial event occurred implicating the Appellant. It is the position of the Appellant that the [t]rial [c]ourt's failure to declare a mistrial was reversible error.

Appellant's Brief at 8-9 (emphasis and paragraph break added).

The trial court explained it removed Juror No. 4 "as a precautionary measure to [e]nsure an impartial trial, free of outside influences, and to avoid the appearance of impropriety." Trial Ct. Op., 7/7/23, at 4 (citation omitted). The court reasoned that juror, "as evidenced by his comment, violated the oath he took to remain impartial and this [c]ourt's instructions to refrain from communication about the case with anyone prior to deliberation." *Id.* The court then concluded that it "swiftly addressed" "the possibility of prejudice or bias resulting from the limited comment made quietly by [Juror No. 4] to [Juror No. 3."] *Id.*

Preliminarily, we note that while Appellant sets forth the standard of appellate review of a "discharge of a juror," he is not challenging the trial court's removal of Juror No. 4. *See* Appellant's Brief at 8. Furthermore, while Appellant avers Juror N. 4 "openly question[ed] the credibility" of his trial testimony, Appellant ignores that the trial court: removed Juror No. 4; directed that an alternate juror take his place; and, at Appellant's request, questioned Juror No. 3 as to what effect, if any, Juror No. 4's comment had on him. *See id.* Additionally, Appellant does not address that when the trial court asked if he wished that Juror No. 3 also be removed, Appellant declined,

and he declined to make inquiry of any other juror. *See* N.T., 3/7/23, at 422. Accordingly, while Appellant broadly suggests that the trial court's failure to grant a mistrial deprived him of a fair trial, he does not develop any discussion why, in light of the particular circumstances presented, Juror No. 4's comment deprived him of a fair trial.

Accordingly, we conclude that Appellant has waived his claim on appeal for failing to develop an argument. "The failure to develop an adequate argument in an appellate brief may [ ] result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citation and quotation marks omitted). Accordingly, we conclude no relief is due.

Moreover, even if Appellant had presented a reviewable issue on appeal, we would conclude he is not entitled to relief. Appellant appears to forward an argument that the juror's comment warranted a new trial *per se,* presumably on the basis that Juror No. 4 prejudged the defendant's guilt, which in turn deprived him of a fair trial. We would disagree.

This Court's decision in *Commonwealth v. Szakal*, 50 A.3d 210 (Pa. Super. 2012), involved a spontaneous comment by a juror, which the defendant alleged warranted a mistrial. During jury selection, a potential juror "complained . . . about the wait and said he was going to leave. He further stated that he had already made up his mind, because '[Szakal] is fucking guilty anyway.'" *Id.* at 218. That juror was removed from the courtroom.

The trial court then questioned the jury pool regarding this disruption; six jurors heard the exchange and were not empaneled. Szakal moved for a mistrial. We reviewed that claim under the following principles of law:

> It is well-settled that "[a] defendant has the right to have his case heard by a fair, impartial, and unbiased jury and contact among jurors, parties, and witnesses is viewed with disfavor." However, "[t]he decision to declare a mistrial is within the sound discretion of the [trial] court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial."

*Szakal*, 50 A.3d at 218 (citations omitted).

The *Szakal* Court concluded that Szakal was not denied a fair trial, as the offending juror "was immediately removed from the courtroom and the trial court conducted a colloquy of the remainder of the venire." *Szakal*, 50 A.3d at 218. We additionally opined, "[T]o the extent [Szakal] suggests that more than six prospective jurors necessarily heard the outburst and members of the venire were untruthful with the trial court," the record did not support that claim. *Id.* at 219. Furthermore, this Court reasoned: "Regardless, counsel . . . was given the opportunity to question prospective jurors following the incident and, most importantly, the jurors ultimately empaneled were not affected by [the removed juror's] comments." *Id.*

We reiterate that in the case *sub judice*, the trial court removed Juror No. 4 following his interjection. Although Appellant asked the trial court to question Juror No. 3, to whom the Juror No. 4's comment was apparently made, Appellant declined to question other jurors as to whether they

- 8 -

overheard Juror No. 4's comment and, if so, whether it affected their ability to impartially render a verdict. Presently Appellant raises no claim that the remaining jurors shared Juror No. 4's sentiment, nor that Juror No. 4's comment somehow infected the rest of the jury.

Finally, we observe that decisional authority, which held a mistrial was warranted due to the entire jury's being tainted, tend to involve the conveying of extra-trial information, rather than an opinion. For example, in **Commonwealth v. Harkins**, 328 A.2d 156 (Pa. 1974), prospective jurors were questioned collectively by the trial court. *Id.* at 156-57. No juror responded when the court asked if anyone knew the prosecutor. *Id.* A juror then announced, however, that he (the juror) should not sit on the case. *Id.* The court asked, "Have you had some contact with [the prosecutor] that would not qualify you?" *Id*. at 157. The juror replied, "Yes, he stole my car [sic]." *Id*. The juror was referring to the defendant, whom he did suspect to have stolen his car. *Id.* The trial court removed that juror from the panel but denied the defendant's request to strike the entire panel. *Id.*

On appeal, the Pennsylvania Supreme Court reversed, determining that "the other prospective jurors . . . could have reasonably understood that the accusation was directed at" the defendant and held that the trial court erred in failing to strike the panel. **Harkins**, 328 A.2d at 157. The Court held the defendant was "deprived of a fair trial by a panel of impartial and indifferent jurors," where the jury "received nontestimonial information of a prior crime

other than that for which the [defendant] was being tried." *Id.* The Court rejected the Commonwealth's assertion that any error by the trial court was harmless: "When the jury learns that the person being tried has previously committed another crime, the prejudicial impact cannot be considered insignificant." *Id.* at 157-58.

Unlike *Harkins*, here, Juror No. 4 did not claim knowledge of facts concerning Appellant or his crimes. At most, he expressed an opinion that Appellant was not credible. Appellant does not argue the other jurors shared this view, which in any event could have been explored if Appellant had requested the trial court to individually ask each juror if the comment had any bearing on their view of the case.

Finally, the fact that the trial court immediately informed the jury that it should ignore the comment would tend to ameliorate any prejudice, as we presume that jurors follow a court's instructions. *See Commonwealth v. Coleman*, 230 A.3d 1042, 1050 (Pa. 2020). We cannot agree that the comment at issue here was prejudicial to the extent a mistrial was required.

For the forgoing reasons, we conclude no relief is due and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Dubow joins the Memorandum.

Judge McLaughlin Concurs in the Result.

- 10 -

Judgment Entered.

![signature: Benjamin D. Kohler]

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/22/2023</u>