2020 PA Super 136

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY ALAN ROSENTHAL | : | |
| | : | |
| Appellant | : | No. 1401 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 9, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000418-2017

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                                          **FILED JUNE 8, 2020**

Appellant, Jeffrey Alan Rosenthal, appeals from the judgment of sentence following his jury trial conviction of theft by unlawful taking or disposition, receiving stolen property, theft by deception, forgery, deceptive or fraudulent business practices, and misapplication of entrusted property and property of government or financial institutions.[1]  We affirm.

On December 16, 2016, Appellant, who had been the longstanding president of the Taylor Allerdice High School Alumni Association and the 14th Ward Baseball Association in Pittsburgh, was arrested in conjunction with a scheme in which he misappropriated money from those organizations for his personal use.  On February 21, 2017, a criminal information was filed charging

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a), 3925(a), 3922(a)(1), 4101(a)(3), 4107(a)(6), and 4113(a), respectively.

him with three counts of theft by unlawful taking or deception, three counts of receiving stolen property, one count of theft by deception, eight counts of forgery, one count of deceptive or fraudulent business practices, and three counts of misapplication of entrusted property and property of government or financial institutions.

Appellant proceeded to a jury trial in September 2017. On October 5, 2017, the jury found Appellant guilty on all charges. On April 9, 2018, the trial court sentenced Appellant to an aggregate 21-year term of probation and directed Appellant to pay restitution of $228,202.34. Appellant filed a timely post-sentence motion in which he, *inter alia*, sought a new trial based upon claims of ineffective assistance of trial counsel; Appellant later filed an amended post-sentence motion, in which he asserted additional ineffective assistance claims. Separately, Appellant filed a motion for a new trial based upon a letter that Juror Number 5 at his trial had sent to the trial court shortly after the verdict expressing concerns about jury deliberations. On September 5, 2018, the trial court entered orders denying the post-sentence motions. Appellant filed a timely appeal.[2]

Appellant raises the following issues on appeal:

I. Whether Appellant is entitled to relief on his claim that a juror was coerced by other jurors to render a guilty verdict where other

---

[2] Appellant filed a concise statement of errors complained of on appeal on December 21, 2018, a supplemental statement on January 29, 2019, and a second supplemental statement on July 18, 2019. The trial court filed its opinion on October 2, 2019.

jurors made statements indicating racial and national origin animus?

II. Whether defense counsel was ineffective for failing to poll the jury?

Appellant's Brief at 1.

First, Appellant argues that the trial court erred by not holding a hearing regarding the letter that Juror Number 5 sent to the trial court after verdict. Appellant contends that this letter "show[ed] that the deliberations were tainted by statements of racial bias" and that several of the other jurors did not answer truthfully that they could fairly and impartially decide Appellant's case. *Id.* at 5, 8. Appellant argues that, pursuant to **Pena-Rodriguez v. Colorado**, 137 S.Ct. 855 (2017), the juror bias shown in the letter provides an exception to the rule that jury deliberation is not subject to impeachment.[3]

Pennsylvania Rule of Evidence 606(b) dictates that "[d]uring an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict." Pa.R.E. 606(b)(1). The "no impeachment rule," as Rule 606(b) is known, prevents juror testimony regarding "what transpired in the jury room[, which] would destroy the security of all verdicts and go far

---

[3] Appellant also argues that he was denied his right to a meaningful appeal because the record certified by the trial court omitted Juror Number 5's letter and the affidavit he submitted in support his motion for a new trial. However, subsequent to Appellant's filing of his brief, Appellant moved the lower court to supplemental record, and the trial court transmitted a supplemental record containing the relevant documents to this Court.

toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence." ***Commonwealth v. Szakal***, 50 A.3d 210, 223 (Pa. Super. 2012) (citation omitted).

Rule 606(b) allows a juror to testify about the deliberative process within two limited exceptions:

> (A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or
>
> (B) an outside influence was improperly brought to bear on any juror.

Pa.R.E. 606(b)(2).

> Under the exception[s] to the no impeachment rule, a juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations. Under no circumstances may jurors testify about their subjective reasoning processes.

***Szakal***, 50 A.3d at 223 (citation omitted). "The procedure for the development of [claims that the jury was exposed to extraneous information] and their ultimate disposition remain vested, in the first instance, within the sound discretion of the trial courts." ***Pratt v. St. Christopher's Hospital***, 866 A.2d 313, 324 (Pa. 2005).

The no impeachment rule is followed, with some variation, in all 50 states and in the federal courts. ***Pena-Rodriguez***, 137 S.Ct. at 865. In ***Pena-Rodriguez***, the United States Supreme Court recognized that, when there is evidence of racial animus that motivates a jury's finding of guilt, an exception exists to the federal and state no impeachment rules pursuant to

- 4 -

the Sixth Amendment right to a jury trial in criminal cases. *Id.* at 869.[4] The Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id.*

However, the Court in *Pena-Rodriguez* recognized that some allegations of racial prejudice in the jury room do not necessitate an inquiry into the validity of the verdict:

> Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

*Id.*

---

[4] In *Pena-Rodriguez*, the United States Supreme Court abrogated the Pennsylvania Supreme Court's decision of *Commonwealth v. Steele*, 961 A.2d 786 (Pa. 2008), in which our Supreme Court held that the no impeachment rule barred consideration of a juror's declaration that several other jurors expressed racial bias towards the defendant and appeared to vote to convict based upon the defendant's race. *Id.* at 807-08; *see also Pena-Rodriguez*, 137 S.Ct. at 865 (citing *Steele* and noting that Pennsylvania was one of only two states that had declined to find an exception to the no impeachment rule for racial bias).

In the letter, which was dated the same day as the date of the verdict, Juror Number 5 wrote to the trial court that "there is a lot that troubles me about the deliberation portion of this trial." Supplemental Certified Record, Docket Number 5. The juror continued:

> In honesty, I do not agree with some of the charges that I voted for conviction on; I consented because I was worn down from arguing with the other members of the jury. I cannot shake the reasonable doubt in the back of my head. However, a more troubling issue arose during the time that I spent with the other jurors.

> During this trial, I've sat in on ethnic "jokes," negative comments about the city and people who live in it and my reservations are part of a larger feeling that the deliberations are anything but fair and [im]partial.

*Id.* Juror Number 5 related that one juror joked about "Italian men beating their wives," another said "she thought Italian men wanted sex all the time," and a third told a story about how her mother scolded her for dating an Irish person based upon a "ridiculous stereotype." *Id.* Juror Number 5 then stated that "[w]hile, I understand the defendant is not a part of either of these groups, stereotypes may be influencing their votes as well." *Id.*

Juror Number 5 concluded the letter by questioning whether her fellow jurors could have fairly and impartially rendered a verdict if "their minds were made up before we opened one evidence binder." *Id.*

> If these jurors hold stereotypical views that impact their treatment of others with regards to ethnicity, classes, and varying other social factors, how are they to fairly assure an unbiased trial? Guilt is the factor to which guilt should be assigned, not a name, income, or other socioeconomic factor.

*Id.*

While his motion for a new trial was pending, Appellant submitted to the trial court an affidavit from a private investigator who interviewed Juror Number 5. According to the affidavit, Juror Number 5 stated, in relevant part, that she "was so pressured to find [Appellant] guilty, she would have found her own mother to be guilty to get away from the unfair pressure the [other] Jurors put on her." Affidavit, 6/27/18. The juror identified two particular jurors who pressured her, and stated that one of them told her that Appellant "wanted to live high on the hog with those people in Squirrel Hill." *Id.* Appellant stated that, if she were polled by the trial court, she would have told the judge that she was "forced" into voting to convict Appellant. *Id.*

The trial court denied Appellant's post-sentence motion for a new trial without holding a hearing. In its opinion, the trial court distinguished *Pena-Rodriguez* because in that case, a juror expressed an anti-Hispanic bias directly relating to the Hispanic defendant and alibi witness. Opinion, 10/2/19, at 6. The trial court stated that further inquiry regarding the jury's deliberation was not required in the instant case as Appellant's ethnicity was never established at trial and "[n]one of the boorish, ethnic remarks was directed at or involved in finding [Appellant] guilty." *Id.*

Upon review, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial without holding a hearing. First, Juror Number 5's statements that she voted to convict Appellant because she was worn down from arguing with the other jurors, that she felt forced into

voting to convict, and that she had lingering doubts about Appellant's guilt relate to the jury's subjective deliberative process; these matters are expressly excluded from inquiry by the no impeachment rule. Pa.R.E. 606(b)(1); *Szakal*, 50 A.3d at 223. Appellant did not bring forward evidence that the deliberations were tainted by extraneous or outside information, and therefore the exceptions set forth in Rule of Evidence 606(b)(2) are not applicable here.

Furthermore, the ethnic jokes and stereotypes[5] that Juror Number 5 described in her letter do not "cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict" such that the Sixth Amendment exception to the no impeachment rule is implicated. *Pena-Rodriguez*, 137 S.Ct. at 869. In *Pena-Rodriguez*, the defendant, a Hispanic man, was convicted in Colorado state court of several sexual offenses. *Id.* at 861. After the verdict was issued, defense counsel spoke with two jurors who stated that another juror, identified as H.C., expressed anti-Hispanic bias during deliberations. *Id.* at 861-62. The two jurors then submitted affidavits to the trial court in which they detailed various statements by H.C., including

---

[5] We assume for the purposes of this decision that the negative comments related to ethnicity and national origin Juror Number 5 described fall within *Pena-Rodriguez*'s "racial bias" exception to the no impeachment rule. *Cf. Pena-Rodriguez*, 137 S.Ct. at 863 (observing that the juror comments at issue in that case related to the Hispanic identity of the defendant rather than his racial group but that the Court has "used the language of race when discussing the relevant constitutional principles in cases involving Hispanic persons").

that he believed the defendant to be guilty because "Mexican men had a bravado that caused them to believe they could do whatever they wanted with women" and "nine times out of ten Mexican men were guilty of being aggressive toward women and young girls." *Id.* The two jurors also related that H.C. stated that "he did not find [the defendant's] alibi witness credible because, among other things, the witness was 'an illegal.'" *Id.* The trial court denied the motion for a new trial on the basis of the Colorado no impeachment rule. The Supreme Court, however, reversed, holding that the trial court erred in finding that the no impeachment rule barred inquiry into potential racial bias, because "[n]ot only did juror H.C. deploy a dangerous racial stereotype to conclude petitioner was guilty and his alibi witness should not be believed, but he also encouraged other jurors to join him in convicting on that basis." *Id.* at 870-71.

In this matter, Juror Number 5 stated that several of the jurors told jokes or stories during deliberations that cast individuals of Italian and Irish ancestry in a negative light. Crucially, however, Juror Number 5 did not state that these jokes and stories were directed towards Appellant or any other participant in the trial or that the jurors relied on these stereotypes in rendering their verdict. Furthermore, there is nothing of record to indicate that Appellant, his attorney, or any of his witnesses at trial belonged to either of these ethnic groups. While the comments Juror Number 5 overheard led her to question whether the jury rendered a fair and impartial verdict, this conclusion arose out of Juror Number 5's speculation as to her fellow jurors'

thought processes rather than on the content of the comments themselves. Thus, the statements at issue here are the type of "offhand comment[s]" evincing racial prejudice but not directly calling into question the integrity of verdict that **Pena-Rodriguez** stated fall outside the Sixth Amendment exception to the no impeachment rule. **Id.** at 869. Accordingly, the trial court did not abuse its discretion in concluding that further inquiry into the jury's deliberations was not warranted because the comments identified by Juror Number 5 do not "show that racial animus was a significant motivating factor in the juror[s'] vote to convict." **Id.** Appellant's first appellate issue merits no relief.

In his second issue, Appellant argues that his trial counsel provided ineffective assistance because he did not request that the trial court poll the jury after the guilty verdict was rendered. Appellant notes that the jury twice returned with questions for the trial court during its deliberations, the second time stating that they were deadlocked as to four counts "with no end in sight." N.T., 10/5/17, at 557. Appellant contends if the jury were polled, it would have revealed Juror Number 5's misgivings regarding the deliberations and led to a mistrial.

Appellant's ineffective assistance of counsel claim is not cognizable on direct appeal and must be deferred to collateral review under the Post Conviction Review Act (PCRA).[6] **See Commonwealth v. Holmes**, 79 A.3d

---

[6] 42 Pa.C.S. §§ 9541-9546.

562, 576 (Pa. 2013) (stating that, except in limited, identified circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review"); *Commonwealth v. Hopkins*, ___ A.3d ___, 2020 PA Super 25, *11 (filed February 7, 2020) (same). Three exceptions have been recognized to the general rule that ineffective assistance claims may not be raised in a direct appeal: (i) in "extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice"; (ii) where the defendant asserts multiple ineffective assistance claims, shows good cause for direct review of those claims, and expressly waives his entitlement to PCRA review before the trial court; and (iii) "where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Commonwealth v. Delgros*, 183 A.3d 352, 360-61 (Pa. 2018); *Holmes*, 79 A.3d at 563-64.

None of these exceptions are present here. With respect to the first exception, the trial court has discretion to review an ineffective assistance claim on direct review when presented with an "extraordinary case" where the claim "is both meritorious and apparent from the record." *Holmes*, 79 A.3d at 577. The trial court did not abuse its discretion in not finding that Appellant's claim of ineffective assistance was so clearly meritorious and apparent from the record to overcome the heavy presumption that ineffective

assistance claims are reserved for collateral review.[7]  *Id.* at 577 n.10; *Commonwealth v. Knox*, 165 A.3d 925, 928 (Pa. Super. 2017).  Appellant is not entitled to immediate review of his ineffective assistance claim under the second exception because, in his post-sentence motions, Appellant did not allege that there was good cause for the trial court's immediate review of his ineffective assistance claim and he did not expressly waive his entitlement to PCRA review.  *Delgros*, 183 A.3d at 360; *Holmes*, 79 A.3d at 564, 578.

Finally, Appellant has not demonstrated that he would be precluded from seeking PCRA review of his ineffective assistance claim.  In *Delgros*, the Court concluded that consideration of an ineffective assistance claim on direct review was warranted because the defendant was ineligible for PCRA relief as he had only been sentenced to pay a fine.  183 A.3d at 361 (citing 42 Pa.C.S. § 9543(a)(1)).  Here, by contrast, Appellant was sentenced to a 21-year term of probation, and therefore he is not precluded from bringing a claim under the PCRA.  42 Pa.C.S. § 9543(a)(1)(i) (to be eligible for PCRA relief, the petitioner must plead and prove that he "has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime").  Consequently, we may not consider the ineffective assistance claim raised by Appellant in this direct appeal.

---

[7] We observe in particular that Juror Number 5's concerns about the jury deliberations were not communicated to the trial court or Appellant's counsel until after the jury was dismissed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2020