J-A14041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
MELVIN A. LESAY :
:
Appellant : No. 1893 EDA 2024

Appeal from the Judgment of Sentence Entered January 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000624-2020

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED SEPTEMBER 4, 2025**

Appellant, Melvin A. Lesay, appeals *nunc pro tunc* from the judgment of
sentence entered following bench convictions of sexual assault, corruption of
a minor, unlawful contact with a minor, and two counts of indecent assault
without consent.[1] He raises multiple allegations of trial counsel's ineffective
assistance and a sufficiency challenge based on credibility. We defer the
ineffective assistance claims to collateral review under the Post Conviction
Relief Act, 42 Pa.C.S. § 9541 *et seq*. ("PCRA") and affirm the judgment of
sentence.

The facts proven at trial are as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3124.1, 6301(a)(1), 6318(a)(1), and 3126(a)(1),
respectively.

On the afternoon of October 24, 2019, 16-year-old [A.J.], boarded a public bus home from school. Seeing no other open seats, she sat down next to 23-year-old [Appellant], whom she had known for about two years at that time. Over the course of those two years, while [Appellant] and [A.J.] had been communicating by text and occasionally FaceTime, Appellant repeatedly propositioned her for sexual intercourse and photos. After [A.J.] sat down next to [Appellant], they [exchanged] a few pleasantries, with [Appellant] responding to [A.J.] in English, before [Appellant] again propositioned [her] for sex, which she declined. [A.J. and Appellant] made plans to introduce [Appellant] to her grandparents. [A.J.] agreed to get off the bus with [Appellant] and walk with him to his house, so he could change his clothes, and then [go] to meet her grandparents.

When they arrived at [Appellant's] residence, [he] insisted that [A.J.] go inside with him, despite her stated desire to remain outside. Appellant grabbed [A.J.'s] forearm in a tight grip and forced her inside, despite repeated protests. [Appellant] then took [AJ.'s] clothes off against her will. [Appellant] forced his penis into [A.J.'s] mouth. [Appellant] then pushed [A.J.] down on his bed, holding her arms behind her back, laying on top of her. He inserted his penis into her anus and then into her vagina. After he was finished, he wiped off her tears, kissed her forehead and told her it was okay. He opened the door and she left.

After arriving home, [A.J.] confessed to her grandparents that she had been raped, although she claimed it had happened in the park, because she was afraid that she would get in trouble for being at [Appellant's] house. [Her] grandparents took her to the hospital and the Special Victims Unit to whom [A.J.] gave a statement, in which she corrected the inaccurate information she had given her grandparents.

Opinion, 10/17/24 ("Trial Court Opinion"), 1-2 (record citations omitted).

Appellant waived his right to a jury trial. At the bench trial, A.J. testified and the Commonwealth submitted her medical records supporting her testimony into the record. The court found Appellant guilty of the above-mentioned offenses. N.T. Trial, 10/3/22, 81. In also acquitting Appellant of

the far more serious charged offenses of rape, involuntary deviate sexual intercourse, and indecent assault by threat of forcible compulsion, *inter alia*, the court stated:

> Obviously[,] this is a difficult case, because the only people who really know what happened are [A.J. and Appellant].
>
> I looked at the evidence and the testimony, mostly of [A.J.]. … It seems to me that what started out may have been consensual and then went south after that.
>
> And I don't think that she necessarily consented to all the activities, and certainly not in the way they were performed, in such a way that she has physical damage to her body.

N.T. Trial, 10/3/22, 81.

On January 18, 2023, the court sentenced Appellant to concurrent terms of two to four years' imprisonment to be followed by three years of reporting probation on each of the felony convictions: sexual assault; corruption of a minor; and unlawful contact with a minor. N.T. Sentencing, 1/18/23, 19. The court imposed no further penalty on the convictions for indecent assault without consent. Appellant is required to be a lifetime sex offender registrant and was so advised. ***Id.***, 20, 24-26.

The court appointed new counsel at the end of the sentencing hearing, and trial counsel promised to work with appellate counsel and file a post-sentence motion if need be. ***See*** N.T. Sentencing, 1/18/23, 28-29. Neither a post-sentence motion nor a notice of appeal were filed. Instead, on May 24, 2023, Appellant filed a *pro se* motion for leave to file an appeal *nunc pro tunc*. ***See*** Appellant's Motion for Leave to File Notice of Appeal Nunc Pro Tunc,

5/24/23, 1-3. The court listed Appellant's motion as a petition for relief pursuant to the PCRA. Prior appointed counsel acted on Appellant's behalf until September 15, 2023, when present counsel, also Appellant's immigration counsel, entered his appearance on behalf of Appellant. *See* Entry of Appearance, 9/15/23.

On December 18, 2023, Appellant filed an amended PCRA petition in which he alleged trial counsel's ineffective assistance. *See* Appellant's PCRA Petition, 12/18/23, 3-8. On February 16, and April 17, 2024, Appellant filed counseled amendments to his motion for leave to file an appeal *nunc pro tunc*. *See* Amendment of Defendant's Motion to File *Nunc Pro Tunc*, 2/16/24; Second Amendment of Defendant's Motion to File *Nunc Pro Tunc*, 4/17/24. On June 25, 2024, the PCRA court reinstated Appellant's "right to file post-sentence motions or a direct appeal." PCRA Court Order, 6/25/24. On July 15, 2024, Appellant filed a timely notice of appeal *nunc pro tunc*. *See* Appellant's Notice of Appeal, 7/15/24.

The trial court and Appellant complied with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

The issues raised by Appellant in this appeal are as follows:

1. Did Appellant's trial counsel [] fail to perform at the objective standards expected of a member of the legal profession by not raising Appellant's viable criminal defenses during trial and by ignoring evidence that was both admissible and available which would have helped establish a viable defense for the Appellant?

2. Did Appellant's trial counsel, despite Appellant's request to testify during the trial, have no reasonable basis for not allowing

Appellant to testify on his own behalf and he suffered prejudice as a result …?

3. Did Appellant's trial counsel give unreasonable professional advice in developing a criminal defense strategy that did not allow for the Appellant to present his own witnesses and alibi, and thereby causing Appellant to suffer prejudice as a result of not presenting substantial exculpatory evidence?

4. Did Appellant's trial counsel investigate adequately in good faith and with substantive effort the possibility of evidence that would be of value to the Appellant [in] presenting his case by interviewing, assessing and identifying those individuals that are most helpful at trial as potential witnesses?

5. Did Appellant's trial counsel fail in providing reasonable professional legal assistance by not requesting and … consulting with a medical expert regarding the Complainant's medical records from the night of the alleged assault who could have provided an objective analysis and/or impeach the [Commonwealth's] findings?

6. Did the Appellant's trial counsel fail to reasonably and adequately inform Appellant of his right to have a jury trial and thereby prejudicing Appellant by having him waive his right unknowingly as he was advised by his attorney to only answer "yes"?

[7]. Did the [trial court] clearly err in finding the Appellant guilty beyond a reasonable doubt which is not supported by Complainant's contradictory testimony?

[8]. Did the [trial court] abuse its discretion in determining the credibility of the Complainant and the sufficiency of the [Commonwealth's] evidence given the inconsistencies and lack of sufficient evidence that convicted Appellant and violated his due process rights?

Appellant's Brief, 4-7 (suggested answers and subheadings omitted). In addition, Appellant specified that each of the first six questions alleged the ineffective assistance of trial counsel. *Id.*, 4. The final two issues were listed under a subheading alleging the "clearly erroneous finding of complainant as

credible witness and sufficiency of the evidence to convict applying the law's 'beyond reasonable doubt' standard[.]" ***Id.***, 6.

Appellant alleges the ineffective assistance of trial counsel for: (1) not raising viable defenses at trial;[2] (2) not presenting evidence of the victim's "specific motivations" for falsely alleging a sex offense against Appellant;[3] (3) not allowing Appellant to testify; (4) failing to fully investigate the case in that he failed to interview witnesses, request medical records or DNA lab reports, or obtain text messages between the victim and Appellant; (5) failing to fully advise Appellant on whether to waive a jury; and (6) failing to ensure adequate translation services for Appellant both in court and in conferences with counsel. ***See*** Appellant's Brief, 18-27. We defer these claims to post-conviction review. ***See Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002) ("as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review").

_____

[2] Within the umbrella of unraised defenses, Appellant asserts he could have "raised character evidence as a viable defense." Appellant's Brief, 18. We note, trial counsel presented character evidence by stipulation at the bench trial to prove Appellant's reputation for law abidingness and peacefulness. ***See*** N.T. Trial, 10/3/22, 68-69.

[3] Within this umbrella claim of alleged evidence of "various text messages" that would explain the victim's motive, Appellant asserts the victim lied "to protect her own reputation" and hide her relationship with Appellant from her grandparents. Appellant's Brief, 20. We note that trial counsel suggested in cross-examination of the victim and her grandfather that she lied about the assault because the grandfather was strict. ***See*** N.T. Trial, 10/3/22, 48-49, 55-56, 62, 64.

In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court reaffirmed the general rule which was initially set forth in **Grant** that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Holmes**, 79 A.3d at 576 (footnote omitted). As this Court explained: there are "two limited exceptions to this general rule" of deferral: (1) in "an extraordinary case" where the trial court, exercising its discretion, determines a claim of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted; or (2) when a defendant raises "multiple, and indeed comprehensive," ineffectiveness claims, which the trial court, in its discretion, and for good cause shown, determines post-verdict review is warranted, and the defendant waives his right to PCRA review. **See Commonwealth v. Watson**, 310 A.3d 307, 311 (Pa. Super. 2024) (quoting **Holmes**, 79 A.3d at 577-578).

There also is a third exception wholly inapplicable here for when a defendant is statutorily precluded from obtaining PCRA review. **See Commonwealth v. Delgros**, 183 A.3d 352, 361 (Pa. 2018). Appellant is eligible for PCRA relief as he was sentenced to an aggregate term of seven years of imprisonment and supervision. **See** 42 Pa.C.S. § 9543(a)(1)(i) (to be eligible for PCRA relief, the petitioner must plead and prove that he "has been convicted of a crime under the laws of this Commonwealth and is at the time

relief is granted ... currently serving a sentence of imprisonment, probation or parole for the crime").

Here, the court reinstated Appellant's right to file post-sentence motions or a direct appeal and properly declined to review the ineffective assistance of counsel claims. **See Commonwealth v. Harris**, 114 A.3d 1, 6 (Pa. Super. 2015) ("by determining Appellee was entitled to *nunc pro tunc* relief, the PCRA court overstepped its bounds by substantively reaching the remaining ineffective assistance of counsel claims"). The PCRA court did not exercise its discretion to review any of Appellant's current ineffectiveness claims, much less find that they were either apparent on the record and meritorious in an extraordinary case warranting immediate consideration, or for good cause consider such claims on post-verdict review upon Appellant having waived his right to PCRA review. Since none of the exceptions to the general rule of deferral are present here, Appellant's allegations of ineffective assistance – none of which have been proven at a hearing – "are not properly before us on this direct appeal." **Watson**, 310 A.3d at 313; **see also Commonwealth v. Rosenthal**, 233 A.3d 880, 887 (Pa. Super. 2020) ("we may not consider the ineffective assistance claim raised by Appellant in this direct appeal" where none of the exceptions to the general rule of deferral apply). Our ruling is without prejudice to Appellant's ability to raise his ineffective assistance claims anew in a PCRA proceeding in the normal course. **Watson**, 310 A.3d at 313.

In his final two issues on appeal, Appellant argues that the evidence was insufficient to sustain his convictions because the victim's "testimony was

inconsistent and contradictory [at] various times throughout the trial, lending to serious concerns as to her credibility." Appellant's Brief, 28. He contends that the "multitude of inconsistencies in [the victim's] testimony would raise any reasonable person's doubts as to the credibility of the witness and her testimony, especially the fact finder in this case who is a judge well versed in the United States and Pennsylvania's criminal legal standard of 'beyond a reasonable doubt.'" *Id.*, 34. Appellant does not contest that the victim's testimony, if accepted as true, established each element of the crimes of which he was convicted, but rather asks this Court to "examine" and determine "whether there was sufficient evidence ... beyond a reasonable doubt." *Id.*, 37.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id.* It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id.* Moreover, a "complainant's testimony alone is sufficient to sustain a conviction for a criminal offense, 'so long as that testimony can address and, in fact, addresses, every element of the

charged crime.'" ***Commonwealth v. Horlick***, 296 A.3d 60, 62 (Pa. Super. 2023) (quoting ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018)).

Under the appropriate legal standard, we have no difficulty determining that the evidence was sufficient to sustain Appellant's convictions. The victim testified that on October 24, 2019, when she was sixteeen years old, she saw Appellant, whom she had known for a few years but had not seen for a while, on a bus on her way home from school, and the two engaged in casual conversation until he asked her if she wanted to have sex with him. ***See*** N.T. 10/3/22, 11-15. The victim declined but continued to talk with Appellant and exited the bus with him. ***See id.***, 15-16. They went to his home, where, despite her refusal to go inside, Appellant, who was much larger and seven years older than the victim, grabbed her hand and brought her directly into his bedroom saying, "everything is going to be okay." ***Id.***, 17-18. Appellant took off the victim's clothes against her will and without her consent. ***See id.***, 18. He then forced her to her knees and shoved his penis in her mouth. ***See id.***, 50-51. After doing so, Appellant threw the victim face first on his bed, and pinned her body and arms with his body, and then, without her consent and against her stated refusals, inserted his penis in her anus and then her vagina. ***See id.***, 18-20. Appellant did not have the victim's consent for any sexual touching. ***See id.***, 21-22, 31. Appellant's actions left the victim in physical pain with injuries in the area of her anus and vagina, and feeling humiliated and degraded. ***See id.***, 22-23, 29, 31, 66-67. This evidence, viewed in the

light most favorable to the Commonwealth, as it must be, is sufficient to sustain Appellant's convictions of sexual assault, corruption of a minor, unlawful contact with a minor, and indecent assault without consent.

Appellant does not argue to the contrary. Rather, he insists that the quality of the victim's testimony was "both inconsistent and contradictory that alone should have created serious doubts of truthfulness." Appellant's Brief, 28. It is well-established, however, that "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Eckrote*, 12 A.3d 383, 386 (Pa. Super. 2010).

Appellant provides examples of what he considers "inconsistent and contradictory" testimony concerning the course of their prior relationship and how often he "badgered" her for sex and how often they saw each other, in light of the fact that he had been in the Dominican Republic for a year of the two years they had known each other. *See* Appellant's Brief, 28-30. "In addition," the victim could not provide written proof of the texts Appellant allegedly sent her, which, according to Appellant "should have been another red flag" for the trial court, because she testified that the cell phone she used at the time had broken. *Id.*, 29. Appellant argues further that the victim was "inconsistent as to what hospital she went to on the night of the alleged incident" and at what times, as well as when she was interviewed by the police and how long she waited to tell her grandparents about the incident. *Id.*, 29-

31. Nonetheless, the medical records and statement to the police definitively confirmed the times, dates and locations. ***See*** N.T. Trial, 10/3/22, Ex. C-1, C-2. The victim admitted that she lied to her grandfather when she first told him that she had been raped in the park because she did not want him to know that against his warnings she had been in Appellant's bedroom, ***id.***, 40, 49, which Appellant argues was a failure of the victim to be "consistent as to the exact location of the alleged assault." Appellant's Brief, 32. Notably, these alleged inconsistencies are about matters other than the sexual assault and are for the most part explained in the testimony directly or were a product of the powerful emotions the victim felt testifying in court. ***See*** N.T. Trial, 10/3/22, 19, 21, 29, 49, 53-54.

With respect to the victim's testimony about the assault, Appellant notes that inconsistencies were brought out by defense counsel on cross-examination with respect to whether he forced her to perform fellatio and how he could have pinned her to the bed. ***See*** Appellant's Brief, 33. Specifically, he notes that counsel elicited on cross-examination testimony from the victim that Appellant, in addition to penetrating her anus and vagina with his penis, also forced her to perform fellatio. ***Id.*** Thereby, according to Appellant, questions were raised "as to whether allegedly Appellant immediately threw her on the bed and penetrated her anus" instead of first forcing her to perform fellatio. ***Id.*** In either version of the exact chronology of events in the sexual assault of a sixteen-year-old, the evidence would still be sufficient to sustain the convictions. More to the point, none of the inconsistencies suggested by

Appellant are so severe "that as a matter of law no probability of fact may be drawn from" the victim's testimony. *Eckrote*, 12 A.3d at 386.[4]

Indeed, Appellant's arguments simply are not sufficiency arguments, because they are based on "an assessment of the credibility of the testimony" at trial. *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa. Super. 2003). "Such a claim is more properly characterized as a weight of the evidence challenge." *Id*; *see also Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (discussing the distinctions between a claim challenging the sufficiency of the evidence and a claim that the verdict is

_____

[4] Although not cited by Appellant, our Supreme Court in *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976), noted that there is a principle that provides "that a verdict of guilt may not be based upon surmise or conjecture." *Id.* at 550. Applying that principal in *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993), the Supreme Court concluded that the testimony of the complainant was so contradictory and unreliable that it was incapable of supporting a guilty verdict and, thus, the evidence entered by the Commonwealth was insufficient as a matter of law to support the verdict. *Id.* at 1172. In *Karkaria*, the adolescent complainant alleged that her stepbrother raped her regularly over a five-month period while acting as her babysitter. *See id.* at 1167-68. Notably, the complainant's description of the sexual assaults were "disturbingly vague" with only one factual scenario to describe the allegedly numerous assaults; and the uncontroverted evidence *contradicted* the complainant's testimony regarding the timing of the assault, as she alleged the assaults only happened when the defendant was babysitting her, but she admitted, and others testified, that the defendant no longer babysat the complainant and was rarely at the family home at the time the alleged assaults occurred. *Id.* at 1171. The victim's testimony here was, in contrast to the testimony in *Karkaria*, clear and plausible, marked only by discrepancies explained in the record and the emotional nature of the event, which occur regularly when a person recounts past events of bodily violation. In addition, the victim's testimony was in no way rendered impossible by uncontroverted evidence.

against the weight of the evidence). "Therefore, we find the Appellant has blurred the concepts of weight and sufficiency of the evidence [and appears to be] raising a weight of the evidence claim." ***Wilson***, 825 A.2d at 714***.***

Any challenge to the weight of the evidence, however, was rendered waived by Appellant's failure to raise the claim prior to sentencing or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:" prior to sentencing or in a post-sentence motion); ***Commonwealth v. Delamarter***, 302 A.3d 1195, 1200 (Pa. Super. 2023) ("A challenge to the weight of the evidence must be raised before the trial court either orally or in a written motion before sentencing, or in a post-sentence motion"). Here, Appellant did not raise the claim prior to or during sentencing, and did not file any post-sentence motion, either in 2023 or after having the right to file a post-sentence motion reinstated in 2024. Consequently, any claim related to the weight of the evidence is waived. ***See Commonwealth v. Bryant***, 57 A.3d 191, 197 (Pa. Super. 2012) (holding that appellate weight claim not raised to the trial court is waived for review).

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025