J-A21019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TROY RONALD SIMMONS | : | |
| | : | |
| Appellant | : | No. 1268 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 14, 2024
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000151-2023

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED: SEPTEMBER 19, 2025**

Troy Ronald Simmons ("Simmons") appeals from the judgment of sentence imposed following his convictions for aggravated indecent assault and recklessly endangering another person ("REAP").[1]  Upon careful review, we discern no reversible error and therefore affirm.

The relevant facts are largely undisputed.  The Commonwealth alleged that in December 2018, when Simmons was eighteen years old, he sexually assaulted the victim, who was fourteen years old.  In July 2023, the Commonwealth charged him with rape by forcible compulsion,[2] aggravated

_____

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3125(a)(1), 2705.

[2] *See* 18 Pa.C.S.A. § 3121(a)(1).

indecent assault without consent, indecent assault without consent,[3] REAP, and terroristic threats.[4]

A jury trial commenced in March 2024. The trial court summarized:

The jury in this matter began deliberating at approximately 4:45 p.m. on March 26, 2024. At approximately 8:45 p.m. the jury informed the court that it had reached a verdict as to [the counts of REAP and terroristic threats]. . . .

Trial Court Opinion, 11/13/24, at 3 (unnecessary capitalization omitted).

After receiving notice from the jury foreperson that the jury could not come to an agreement on the three remaining charges, the trial court convened with counsel. The following exchange occurred:

[Court:] Counsel, the court would propose to give the curative instruction pursuant to **Commonwealth v. Lambert**, [299 A.2d 240 (Pa. 1973),[5]] bring the jurors in and present that to them and send them for further deliberations. Commonwealth, any comments?

[Commonwealth:] Your Honor are you anticipating setting a deadline for today or asking them to come back tomorrow or what is your thought on that?

[Court:] Well, I'm hoping they're able to come up with that. The question would be I would probably have to put them this evening in a hotel. I don't believe that I can send them home, so I do have a deputy and a [tipstaff] available. I'll tell them that

---

[3] **See** 18 Pa.C.S.A. § 3126(a)(1).

[4] **See** 18 Pa.C.S.A. § 2706(a)(1).

[5] **See Lambert**, 299 A.2d at 242 (approving a supplemental deadlock jury instruction, which urged continued deliberations while instructing that all jurors "have a duty to consult with one another" but should not surrender conscientiously held beliefs merely to reach a verdict).

we'll check on hotel reservations at this point and see if we can work to that end.

[Commonwealth:] I have no objection to the instruction.

[Court:] Very good. And Defense Counsel any objections?

[Simmons' counsel:] No problem with the instruction, Judge.

N.T., 3/26/24, at 336-37.

Following this exchange, and without objection from counsel, the trial

court

instructed the jury as to the deadlock charge and further indicated that because deliberations had begun, the jury would be sequestered if a verdict was not reached that evening.

. . . As such, [the] court informed the jurors that if they were unable to complete their deliberations as to the other three . . . counts that evening, they would be sequestered to a local hotel given the complexity and seriousness of the charges against Simmons. . . .

Trial Court Opinion, 11/13/24, at 3-4 (unnecessary capitalization omitted).[6]

We note that at the conclusion of these trial court instructions to the jury, defense counsel did not object. **See** N.T., 3/26/24, at 339-40. Thirty minutes later, the jury rendered its verdict. It found Simmons not guilty of rape, indecent assault, and terroristic threats, but found him guilty of aggravated indecent assault and REAP. "Following the verdict, the jury was polled and unanimously agreed with the verdict." **Id**. at 3.

---

[6] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to the "Defendant" to "Simmons."

The trial court summarized the ensuing procedural history:

On March 27, 2024, the day following the verdict, the court was advised that there may have been communication between court staff and the jury during the deliberation process. As such, the court summoned two . . . jurors to determine if the outside communications impacted their decision. These jurors indicated they were capable of being fair and impartial. Thereafter, on April 29, 2024 this court summoned two other jurors to testify. Juror [12] testified that during deliberations, [tipstaff] stated that this court had never seen a hung jury and that this comment made said juror feel that it was incumbent upon her to make a decision that night. [Juror 4 testified that the possibility of sequestration "led [him] to making a compromise faster than [he] would have otherwise." N.T., 4/29/24, at 26.]

Because of this, th[e] court [*sua sponte*] declared a mistrial but based upon agreement between counsel for the parties, th[e] court struck that decision, allowed the parties time to brief the matter and scheduled a hearing with the remaining jurors to determine if any of the others were swayed by the comment. Upon taking testimony from the remaining jurors, it was determined that no other jurors heard the hung jury comment nor were swayed by any statement of [tipstaff].

Trial Court Opinion, 11/13/24, at 3-4 (unnecessary capitalization and record omitted and paragraph break added).[7]

After considering the jurors' testimony from the evidentiary hearings and the parties' briefs, the trial court concluded that a mistrial was not warranted. On August 14, 2024, the trial court imposed a sentence of twenty-two to forty-eight months' imprisonment for aggravated indecent assault, to be followed by three years' probation, and a concurrent term of one to twelve

---

[7] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to the "Defendant" to "Simmons."

months' imprisonment for REAP. The trial court also required Simmons to submit to lifetime registration under the Sexual Offender Registration and Notification Act ("SORNA").[8]

Simmons filed a timely post-sentence motion, asserting for the first time that the "effect of the deadlock instruction, sequestration instruction, and extraneous influence by [tipstaff], in the aggregate" coerced jurors into reaching an agreement, which in turn denied him his right to a fair and impartial unanimous verdict. Post-Trial Motion for a New Trial, 8/23/24, at 9. Simmons also averred that tipstaff extraneously influenced the jury. The trial court denied the motion.

Simmons filed a timely notice of appeal. Both Simmons and the trial court complied with Pa.R.A.P. 1925.

Simmons raises the following issues for our review:

1. Whether [Simmons] was denied his right to a verdict rendered by a fair and impartial unanimous jury because members of the jury were coerced to reach a unanimous verdict.

2. Whether [Simmons] was denied his right to a verdict rendered by a fair, impartial, and unanimous jury because jury deliberations were tainted by extraneous influence.

Simmons' Brief at 3.

In his first issue, Simmons argues that the trial court coerced the jurors into rendering a verdict when it advised them they would be sequestered overnight if they did not reach a verdict that evening. He contends that the

_____

[8] **See** 42 Pa.C.S.A. §§ 9799.10 to 9799.95.

trial court's deadlock instruction, "and threat of sequestration[,]" pressured the jury into reaching an "inconsistent verdict" and therefore violated his right to a fair trial. Simmons' Brief at 12.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Berrios***, 297 A.3d 798, 805 (Pa. Super. 2023). To preserve a challenge to a jury charge, a defendant must object before the jury retires to deliberate; failure to do so results in waiver. ***See*** Pa.R.Crim.P. 647.

The Commonwealth suggests that Simmons waived any complaint regarding the trial court's deadlock instruction, which included notice that the court may have to sequester the jury, because he failed to raise a timely objection at the time the court gave the instruction.[9]

We agree that Simmons waived his claim. We emphasize that he failed to object to the deadlock instruction, which included reference to a possible sequestration, at any time before the jury returned to deliberations. ***See*** Pa.R.Crim.P. 647. Instead, Simmons raised this issue for the first time in his post-trial motion. Accordingly, no relief is due on Simmons' first issue.

---

[9] We note that Simmons did not file a reply brief to address, let alone dispute, the Commonwealth's waiver argument. ***See*** Pa.R.A.P. 2113(a) (permitting an appellant to file a reply brief in response to the appellee's brief). Moreover, his brief does not cite to any place in the record where he preserved an objection to the trial court's deadlock instruction.

In his second issue, Simmons argues that a tipstaff's comment, that the trial judge had never had a hung jury, tainted the jury's deliberations, denying him the right to a fair, impartial, and unanimous jury.

We review a trial court's ruling, on a claim that "extraneous information and/or outside influence affect[ed] jury deliberations," for an abuse of discretion. ***Commonwealth v. Jeter***, 296 A.3d 1187, 1201 (Pa. Super. 2023). Additionally,

> [i]t is well-settled that "[a] defendant has the right to have his case heard by a fair, impartial, and unbiased jury and contact among jurors, parties, and witnesses is viewed with disfavor." However, "[t]he decision to declare a mistrial is within the sound discretion of the [trial] court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial."

***Commonwealth v. Szakal***, 50 A.3d 210, 218 (Pa. Super. 2012) (citations omitted). The proper inquiry in a claim of improper juror contact is whether there was a reasonable likelihood of prejudice. ***Commonwealth v. Szakal***, 50 A.3d 210, 224 (Pa. Super. 2012).

> A trial court may hear

> post trial testimony of extraneous influences which might have affected (prejudiced) the jury during their deliberations. ***Extraneous information has been defined as information that was not provided in open court or vocalized by the trial court via instructions.*** [A] juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations. Under no circumstances may jurors testify about their subjective reasoning processes.

* * * *

Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. *In determining the reasonable likelihood of prejudice, the trial judge should consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotional or inflammatory in nature.* . . .

Because a trial judge may not consider evidence regarding the subjective impact of an extraneous influence on any juror, it has been widely recognized that the test for determining the prejudicial effect of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence.

*Szakal*, 50 A.3d at 223-24 (emphases in original).

Furthermore, longstanding precedent cautions against speculating about the reasons behind a perceived inconsistent verdict, so long as the evidence is sufficient to support the convictions. *See Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012).

Simmons argues that the tipstaff's remark — "that the presiding 'judge ha[d] never seen a hung jury'" — constituted a prejudicial extraneous influence that pressured the jurors to avoid a deadlock. Simmons' Brief at 26. Simmons emphasizes that Juror 4 testified the threat of sequestration led him to "*compromise* faster than [he] would have otherwise[,]" and that Juror 12 testified she felt compelled to reach a decision that night because the judge had never experienced a hung jury. *Id*. at 32 (emphasis in original).

Simmons further points to the timeline, stressing that after the deadlock instruction and the sequestration warning, the jury reached verdicts on three counts within thirty minutes. Finally, Simmons highlights what he views as an inconsistent verdict — acquitting on indecent assault without consent but convicting on aggravated indecent assault without consent — as further evidence of undue influence.

The trial court acknowledged the tipstaff's comment was inappropriate but found no prejudice. It noted that only Juror 12 heard the remark and expressly testified that it did not affect her determination of guilt or innocence. The remaining jurors testified they had not heard it. Applying *Szakal*, the court concluded the comment was collateral, introduced no new information, and was not inflammatory. As the trial court reasoned,

> When a jury may have been exposed to potentially prejudicial extraneous influence, a Pennsylvania trial judge must assess the prejudicial effect of such influence by applying a three-part test. In determining the reasonable likelihood of prejudice, the trial judge should consider: (1) whether the extraneous influence relates to a central issue in the case or merely involves a collateral issue; (2) whether the extraneous influence provided the jury with information they did not have before them at trial; and (3) whether the extraneous influence was emotion or inflammatory in nature. In applying the instant test to this matter, th[e] court did not find that the tipstaff's comment regarding the hung jury was pertinent to a central issue in the case.

> * * * *

> The court does not find that the [tipstaff's] comment about the court never having a hung jury. . . [rose] to jury tampering nor compromised the integrity of the deliberations process. Juror [12] testified that the comment made [her] feel she had to make a decision that night. Juror [12] did not testify that the comment

swayed her to decide Simmons' guilt or innocence one way or the other. As such, th[e] court did not grant the request for a mistrial.

Trial Court Opinion, 11/3/24, at 4-5 (unnecessary capitalization omitted).

After careful review of the record, we discern no abuse of discretion. The trial court conducted a thorough inquiry, which included multiple hearings and testimony from all the jurors, and the record supports its determination not to grant a mistrial. *See Jeter*, 296 A.3d at 1201. Juror 12 testified that the tipstaff's statement influenced her sense of timing, but it did not influence her substantive vote. Furthermore, we presume that the jurors followed the trial court's instructions. *See Commonwealth v. Scott*, 146 A.3d 775, 780 (Pa. Super. 2016) (determining that "[j]uries are presumed to follow the trial court's instructions"). We also cannot speculate about the reasons behind the jury's split verdict. *See Miller*, 35 A.3d at 1213. We therefore conclude the trial court did not abuse its discretion in finding the tipstaff's comment was collateral, non-inflammatory, and not reasonably likely to have prejudiced the verdict. *See Szakal*, 50 A.3d at 224. Thus, Simmons is not entitled to relief on this claim. Accordingly, we affirm Simmons' judgment of sentence.

Judgment of sentence affirmed.

- 10 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 09/19/2025